ANDREW F. HILL *v.* R. A. RITCHIE, GEORGE FLYNN<br>AND C. H. HANSON.

February Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed August 14, 1916.

*Liens—Priority—Subrogation—Parties.*

Where one pays a lien note, at the request of the debtor, upon the understanding with the debtor that he is to have a new security on the property released, he is not an intermeddler or a mere volunteer, and his payment of the first lien does not necessarily give priority to a second lien upon the property.

In such case, if the payment of the first lien is made under a material and excusable mistake of fact, and no rights of innocent parties have intervened, the first security will be kept alive as against the holder of a subordinate lien, to the amount actually paid.

One who pays and discharges a prior lien at the request of the debtor, in ignorance of the existence of subsequent incumbrances, is entitled to be subrogated to the rights of the first lienor, notwithstanding his failure to make an examination of the records which

would have disclosed the incumbrances.  Nothing short of very
culpable negligence will bar relief in these circumstances.

A finding that one who paid a lien note at the request of the debtor
supposed, when he did so, that the property was free from other
incumbrances fairly implies that he had this in mind as an induce-
ment to his action.

The holder of a lien note discharged upon payment by the orator upon
the agreement of the debtor that he was to have a new security
upon the property, is not a necessary party defendant in a suit
brought to establish the priority of the security so given over a
second lien upon the property existing at the time of the payment
of the note.

APPEAL IN CHANCERY, Orleans County.  The defendant
Hanson appeared specially by his solicitor, and moved to dismiss
the bill, at the March Term, 1915.  Decree dismissing the bill as
against him, with costs.  The defendant Flynn did not appear.
The case then proceeded between the orator and the defendant
Ritchie and was heard on findings of fact by the Chancellor, in
vacation after the March Term, 1915, *Miles,* Chancellor.  Decree
dismissing the bill with costs.  The orator appealed.    The
opinion states the case.

*Dutton & Mulcahy* for the orator.

The orator was subrogated to the rights of Hanson under
the lien note.  2 Pomeroy's Equitable Remedies, Sec. 921; *War-
ford* v. *Hankins,* 150 Ind. 489, 50 N. E. 468; *Deneter* v. *Wilcox,*
115 Mo. 634, 37 Am. St. Rep. 422; *Marlin* v. *Martin,* 164 Ill. 450,
45 N. E. 1007, 56 Am. St. Rep. 219; *MacGreal* v. *Taylor,* 167 U.
S. 688, 42 L. ed. 326; *Davis* v. *Davis,* 81 Vt. 259, 69 Atl. 876;
*Home Savings Bank* v. *Bierstadt,* 168 Ill. 618, 48 N. E. 161, 61
Am. St. Rep. 146; *Emmert* v. *Thompson,* 49 Minn. 386, 32 Am.
St. Rep. 566; *Thompson* v. *Conn. Mut. Life Ins. Co.,* 139 Ind.
325, 38 N. E. 796; *Staraman* v. *Rechtine,* 58 Ohio St. 443, 51
N. E. 44; *Crippen* v. *Chappell,* 35 Kan. 495, 57 Am. Rep. 187;
and note, 99 Am. St. Rep. 519.

Hanson is not a necessary party, because he has no legal or
equitable interest in the subject matter of the suit.  *Payne* v.
*Hathaway,* 3 Vt. 212, 230; *Day* v. *Cummings,* 19 Vt. 496; *Glea-*

*son & Bailey Mfg. Co.* v. *Hoffman,* 168 Ill. 25, 48 N. E. 143; *Moor* v. *Veazie,* 32 Maine 343, 52 Am. Dec. 655, 658; *Darrow* v. *Summerhill,* 24 Tex. Civ. App. 208, 58 S. W. 158; *Polk* v. *Gallant, Devereaux & Battles' Equity,* 395 (N. C.) 34 Am. Dec. 410; *Pickens* v. *Wood,* 57 W. Va. 480, 50 S. E. 818; *Hooker* v. *Eagle Bank of Rochester,* 30 N. Y. 83, 86 Am. Dec. 351, 354; *Potter* v. *Lohse,* 31 Mont. 91, 77 Pac. 419; *Boevink* v. *Christiaanse,* 69 Neb. 256, 95 N. W. 652; Story's Eq. Pl. Secs. 137, 153; 4 Cyc. 102.

*W. W. Reirden* for defendant Ritchie.

The payment of the lien note by the orator, does not entitle him to be subrogated to the rights of Hanson. *Davis* v. *Davis,* 81 Vt. 259, 69 Atl. 876; *Downer* v. *Wilson et al.,* 33 Vt. 1; *Collins* v. *Adams' Executors,* 53 Vt. 433; *Bank of Royallon* v. *Cushing et al.,* 53 Vt. 321; *Arlington State Bank* v. *Paulsten,* 57 Neb. 717, 78 N. W. 303; *Ocobock* v. *Baker,* 52 Neb. 447, 66 Am. St. Rep. 519; *Aultman* v. *Bishop,* 53 Neb. 455; *Eaton* v. *Hasty,* 6 Neb. 419, 29 Am. Rep. 365, 37 Cyc. 363.

The bill having been dismissed as to defendant Hanson, and he being no longer a party to the suit, no decree can be made reviving the lien note and subrogating the orator to the rights of Hanson thereunder. *Schilb* v. *Moon,* 50 W. Va. 47, 40 S. E. 329; *Bond* v. *Montgomery,* 76 Ark. 171, 35 Am. St. Rep. 119; *Wilkins* v. *Gibson,* 113 Ga. 31, 84 Am. St. Rep. 204, 37 Cyc. 388-389.

MUNSON, C. J.   The plaintiff hands up in connection with the findings of the chancellor the transcript of the testimony, and the defendants claim that the transcript is not properly before us.   This question we do not find it necessary to decide.   We state the case as shown by the findings.

October 20, 1914, defendant Flynn bought of one Hanson a pair of horses for $500, giving Hanson a lien note for $400, and a horse valued at $100, on which defendant Ritchie had a mortgage.   December 30th, Flynn gave Ritchie a chattel mortgage on the Hanson horses and other property, to secure an indebtedness to Ritchie amounting to about $1,200.   Hanson was then pressing Flynn for payment and threatening to take the

horses.   After Ritchie had taken this mortgage, Hanson told him
that he would assign the lien note to him for cash, discounting
it $50.   February 15, 1915, Flynn and the plaintiff saw Hanson,
and plaintiff proposed to take an assignment of the lien note if
Hanson would discount it $50.   Hanson thereupon asked Ritchie
by telephone what he should do, and Ritchie replied that he did
not care what he did, if he discharged the note.   Hanson then
told plaintiff and Flynn that Ritchie had guaranteed the pay-
ment of the note, and that if he discounted it $50, he should not
assign it, but should discharge it.   Plaintiff then gave Hanson
a check for the amount of the note less the discount, and Hanson
wrote on the note what he claimed and the plaintiff considered
was a cancellation of the note.   Plaintiff and Flynn then went
to the town clerk's office, where a chattel mortgage from Flynn to
the plaintiff was made and executed, which covered the Hanson
horses and other property.   On the following day the Hanson
lien was discharged of record.

The bill charges Flynn, Ritchie and Hanson with fraud and
collusion, and this was claimed from the above facts and other
details not recited; but the chancellor has found that there was
no fraud.   It is found however, in terms, that when the plaintiff
took the chattel mortgage from Flynn and caused the Hanson
lien to be discharged, he had no knowledge of the chattel mort-
gage given by Flynn to Ritchie, and supposed that the Hanson
horses were free from incumbrance except the lien note.   But
the chancellor finds that the mortgage to Ritchie was duly
recorded in the chattel mortgage records, and that if the plaintiff
had examined the records he could have readily found that such
a mortgage had been given.

The facts reported are equivalent to a finding that the
plaintiff paid the lien note at the request of Flynn, and upon an
understanding with Flynn that he was to have a new security on
the property released.   So the plaintiff was not an intermeddler
or a mere volunteer, and his payment of the first lien did not
necessarily give priority to the second.   If the payment was
made under a material and excusable mistake of fact, and no
rights of innocent parties have intervened, the first security
will be kept alive as against the holder of the subordinate lien.
It is distinctly found that the plaintiff had no knowledge of
Flynn's mortgage to Ritchie when he paid the lien note, and

supposed that the property was free from other incumbrance; but it is not found in terms that his action was induced by this mistaken belief. It has been said that in cases of this character equity will infer that the transaction was induced by the mistake, in the absence of a finding to that effect, if this conclusion is consistent with the facts reported. It is not necessary to inquire as to the soundness of this proposition; for the finding that the plaintiff supposed when he paid the lien note that the Hanson horses were free from other incumbrance fairly implies that he had this in mind as an inducement to the action taken.

The chancellor has found, and has apparently turned the case upon, the facts that the Ritchie mortgage was properly recorded, and that the plaintiff could readily have learned from the records that such a mortgage had been given. The doctrine of constructive notice is not applicable; and we think the findings regarding the record do not constitute a defence. An examination of the records would have disclosed the incumbrance, but the question is whether an examination was required by the rule of diligence applicable to the case. This is not a case where the relief of the plaintiff will cause an actual loss to the defendant. Ritchie has not increased his investment since the payment of the lien note, and a reinstatement of the security will simply leave him in his original position. He will lose nothing but the gain which would otherwise have accrued to him from the plaintiff's mistake. Nothing short of very culpable negligence will bar relief in these circumstances. Parties who have paid prior liens at the request of the debtor in ignorance of the existence of subsequent incumbrances have been held entitled to the remedy of subrogation notwithstanding a failure to examine the records. *Emmert* v. *Thompson,* 49 Minn. 386, 52 N. W. 31, 32 Am. St. Rep. 566; *Bruce* v. *Nelson,* 35 Iowa 157. And see generally *Wilkins* v. *Gibson,* 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204; *Home Sav. Bk.* v. *Bierstadt,* 168 Ill. 618, 48 N. E. 161, 61 Am. St. Rep. 146; *Heisler* v. *Aultman,* 56 Minn. 454, 45 Am. St. Rep. 486; *Seeley* v. *Bacon,* (N. J. Ch.) 34 Atl. 139; 2 Pom. Eq. Jur. §856.

We have cases in which it has been said that courts of equity will never afford relief where a party has acted in ignorance of facts which could have been ascertained by the exercise of due diligence and inquiry. The facts of these cases clearly

distinguish them from the present one.   In *McDaniels* v. *Bk. of Rutland*, 29 Vt. 230, 70 Am. Dec. 406, the orator accepted a sum in full satisfaction of an indebtedness evidenced by papers which were in his possesion but not then at hand, and did this while fully conscious that he was ignorant of the balance due.   In *Hyde* v. *Hyde*, 50 Vt. 301, the Court's comments were made in connection with the statement that the orator's ignorance was due to his failure to read the copy of the petition of foreclosure which was servèd on him.   In *Francis* v. *Park*, 55 Vt. 80, the orator had failed to make a payment required by a judgment in ejectment, and sought relief on the ground that he supposed the installment was payable May first instead of April first.   In *Bishop* v. *Allen*, 55 Vt. 423, the mortgagors did not know that a certain clause was in the mortgage because they failed to read it or have it read to them.   The bill in *Durkee* v. *Durkee*, 59 Vt. 70, 8 Atl. 490, was brought to establish and enforce the performance of a contract under which the defendant was to make the orator his heir.   In *Ripton* v. *McQuivey*, 61 Vt. 76, 17 Atl. 44, the principal statement of the opinion is that the parties evidently were mistaken as to the legal effect of a deed to husband and wife in respect of the doctrine of survivorship.

There is nothing in the facts of the case that shows Hanson to be a necessary party.   His lien note has been paid and cancelled, and the priority of the new security given the plaintiff in lieu of a transfer of the lien note can be established without setting up Hanson's former interest as a medium.   Priority will be given this security only to the amount actually paid by the plaintiff.

*Decree reversed and cause remanded with mandate that a decree be entered establishing the chattel mortgage given by Flynn to the plaintiff as a first lien on said horses superior to the mortgage of defendant Ritchie, and forever enjoining said Ritchie from asserting or enforcing his said mortgage against said property, and from disposing of the same in any manner, without first satisfying plaintiff's said mortgage.*