## Norfolk & Dedham Fire Insurance Company v. Aetna Casualty & Surety Co.

[318 A.2d 659]

No. 193-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 2, 1974

*Hoff, Curtis, Bryan, Quinn & Jenkins,* Burlington, for Plaintiff.

*Pierson, Affolter & Amidon,* Burlington, for Defendant.

**Keyser, J.** The plaintiff seeks reimbursement from the defendant of amounts which it erroneously paid in making settlement of a dog bite claim arising on May 24, 1964. Both parties had issued policies of insurance to the same insured; the one by plaintiff being a homeowner's policy and the one by defendant being an automobile liability policy. The court heard the case on stipulated facts. It found that the plaintiff was a volunteer and guilty of laches and entered judgment thereon for the defendant. The plaintiff appealed.

In May 1964, a Mrs. Loecher, the insured, a resident of Burlington, with her 3-year old daughter and a Weimaraner dog, drove her car to the residence of a friend to visit. She let her daughter out of the car to play in the yard and went into the house. It was a hot day, and the dog was left alone in the unlocked car with the windows open. A small child living in the neighborhood came into the yard to play with the Loecher child. She either got into the Loecher car or attempted to climb into it. The dog bit the child inflicting six lacerations to her face resulting in medical treat-

ment and plastic surgery. Two or three years previously the dog had bitten other people.

Mrs. Loecher gave notice of the injury to the insurance agent who had written both policies. He, in turn, notified the plaintiff company assuming plaintiff's policy provided coverage for the incident and did not notify the defendant company. The plaintiff employed a local agency to investigate and adjust the claim and settled it on August 8, 1966, for $8,885.00. It also incurred settlement expenses of $1,545.55.

Sometime after August 8, 1966, the plaintiff determined that its homeowner's policy did not cover the claim against its insured but that defendant's automobile policy did, whereupon, it brought this suit on May 22, 1970. Until that time the defendant had not received actual notice of the incident, claim, settlement negotiations or the settlement itself or received any demand from the plaintiff either to handle or pay the claim.

Three issues are raised by plaintiff's appeal.

1. Does the plaintiff have equitable subrogation rights against the defendant?

2. Did the trial court err in holding plaintiff was a volunteer?

3. Is plaintiff's claim barred by laches?

Plaintiff's suit is founded on the claim that it is entitled to reimbursement from defendant for the full amount of the settlement and expenses incurred in so doing.

Subrogation is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities or remedies which the creditor may hold against the principal debtor and by the use of which the party paying may thus be made whole. *Walker Process Equipment Co., Inc.* v. *Cooley Building Corp.*, 129 Vt. 333, 339, 278 A.2d 714 (1971). It is a doctrine which has particular approval in Vermont as between insurer and insured. 8 V.S.A. § 4203(4). Subrogation arises when one man is compelled to pay a debt for which another is primarily liable and which, in good conscience, should have been discharged by the latter. *Walker Process Equipment Co., Inc.* v. *Cooley Building Corp., supra.*

Subrogation is an equity creature akin to and derived from the law of unjust enrichment and restitution. Restatement of Restitution § 162 (1937).

■ The general rule is that an obligor or insurer making a payment for which it is not liable is making a "voluntary" payment and cannot be subrogated. 16 G. Couch, Cyclopedia of Insurance Law § 61: 52 (1966); H. Sheldon, Subrogation § 240 (1893); Restatement of Restitution §§ 2, 162, comment *b* (1937); 50 Am.Jur. *Subrogation* § 20; 83 C.J.S. *Subrogation* § 9. Although the general rule has not been applied specifically to insurance law by Vermont, the rule is applied in Vermont to general equitable rights of subrogation and restitution. *Town of Grand Isle* v. *McGowan*, 88 Vt. 140, 145, 92 A. 6 (1914); *Davis* v. *Davis*, 81 Vt. 259, 264, 69 A. 876 (1908); *National Bank of Royalton* v. *Cushing*, 53 Vt. 321, 326 (1881); cf. *Norton* v. *Haggett*, 117 Vt. 130, 132, 85 A.2d 571 (1952); *Hill* v. *Ritchie*, 90 Vt. 318, 98 A. 497 (1916).

■ It is not disputed by the parties that one is a volunteer if he pays while under no obligation to pay or when no interest of his is protected by payment. Couch, *supra*, § 61:54; *cf.* *Norton* v. *Haggett, supra*, 117 Vt. at 132–33. The problem presented is determining what is a "volunteer" in any particular factual situation.

The reasoning behind the rule is that the purpose of subrogation is purely equitable. It is not based on contract or tort, but rather on a theory of restitution and unjust enrichment. Equity should not, however, encourage a person to intrude upon the affairs of another. Persons should be able to deal with whom they choose. There is no reason to force a person to deal with someone he has not chosen simply because that someone intrudes and undertakes a duty of the first person. *Cf.* Sheldon, *supra*, §§ 240, 241; Restatement of *Restitution* § 2, comment a, § 162; *Norton* v. *Haggett, supra*, 117 Vt. at 132. Discouraging voluntary payment encourages prompt resolution of disputes before payment has induced a change in reliance on payment and before passing time interferes with any determination that may be necessary as to the facts. 66 Am.Jur.2d *Restitution and Implied Contract* § 94. We find no established rule in the cases for determining voluntariness in subrogation questions.

Vermont case law does not cover the precise insurance subrogation question raised here. However, it does deal with subrogation and restitution in other voluntary payment situations. Since subrogation is derived from the equity law of unjust enrichment and restitution, a review of the Vermont cases will show the principles that have been adopted for subrogation and restitution in similar noninsurance situations, and which should be applied here. These cases indicate that this Court has determined voluntariness on the basis of the equities rather than any strict rule.

In *Norton* v. *Haggett, supra,* the plaintiff paid the defendant's note and mortgage held by the Northfield Savings Bank with the unexpressed intent of purchasing the note and mortgage. He clearly told the bank's clerk that he wanted to pay off the note, and it was marked "paid" and the mortgage discharged. Plaintiff had quarrelled with defendant and appeared to have had an improper motive for his action. Plaintiff sought restitution from defendant for the value of the note so satisfied. This Court refused restitution on the ground that the payment was (1) officious (a term used synonymously with "voluntary" both in the cases and texts), (2) negligent, (3) in questionable good faith, (4) without self-interest or mistake as to self-interest, (5) not founded on any relationship to the defendant. This Court further stated that allowing restitution would allow the plaintiff to intrude on relations between the bank and the defendant with the consent of neither. *Id.* 117 Vt. at 132.

In *Grand Isle* v. *McGowan, supra,* a Miss Woodward purchased a piano, as trustee, under a conditional sale contract. She bought the piano with the money of, and for the benefit of, her school. One Griswold agreed to see to the payment of the balance when Miss Woodward left the school. Subsequently the school closed. Griswold agreed with the Grange that it could use the piano until wanted by the school. The Grange removed the piano to their hall with this understanding. Later a Mr. Parker advanced the money to pay up the claim of the conditional vendor of the piano. In 1912 the school was reopened. The directors sought return of the piano. The Grange refused and the town brought suit for its return. There was no subrogation agreement in favor of Parker only through whom the Grange could have retained the piano.

This Court, on appeal, *id.* 88 Vt. at 145, held that Parker was not subrogated to the rights of the conditional vendor. It said absent a subrogation agreement, it is essential to the right of subrogation that the person making the payment be one who is under some obligation regarding it, or who has some interest to be protected by it. See also *Davis* v. *Davis, supra,* 81 Vt. at 264.

As stated in *Hall* v. *Windsor Savings Bank,* 97 Vt. 125, 133, 124 A. 593 (1923), and *Clifford* v. *West Hartford Creamery Co.,* 103 Vt. 229, 238, 153 A. 205 (1931), the right of subrogation is a favorite of the law, and the tendency is to extend its application. It is highly equitable in character and is regarded as one of the benevolences of the law. *Cf.* 50 Am.Jur. *Subrogation* § 20. It is said that the concept of "voluntariness" should be strictly construed and limited. 16 Couch, *supra,* § 61:54; 50 Am.Jur. *Subrogation* § 21.

Payment to a third person made under an honest, good-faith mistake of fact or law such as induced the payor to believe that it had some obligation to pay or interest to protect by payment is universally held to be not voluntary, at least under the law of restitution. *Hill* v. *Ritchie, supra,* 90 Vt. at 321; Restatement of Restitution §§ 43, 54.

■ Equity rules are not absolute and competing equities must be considered in any subrogation-restitution situation. The subrogee must have clear equity and subrogation is defeated by countervailing equities. 83 C.J.S. *Subrogation* § 6(b). Subrogation will not be enforced to the prejudice of equal or higher rights. *St. J. & L.C.R.R.* v. *Skeels & Weidman,* 124 Vt. 25, 30, 196 A.2d 485 (1963). It is defeated where payment has jeopardized or defeated intervening rights. Sheldon, Subrogation, *supra,* § 245.

The facts are agreed to and undisputed. The court found that the plaintiff voluntarily made payment of the claim and incurred expenses and was not entitled to indemnification from the defendant.

■ The findings establish that the plaintiff had full knowledge of all the facts and circumstances surrounding the incident in question. Likewise, it knew, or should have known, the provisions and limitations of its policy. The rule is well established that money paid with full knowledge of all the

facts relating to the claim paid constitutes a voluntary payment and cannot be recovered back. *Strong & Jarvis* v. *Oldsmobile Co. of Vt.,* 96 Vt. 355, 359, 120 A. 400 (1923).

There is nothing in the case to indicate that the plaintiff had any knowledge of defendant's insurance policy during its investigation, negotiations and settlement of the claim. The plaintiff paid without coverage, and it had no interest of its own to protect. A reading of its policy provisions would quickly have pointed this out to the plaintiff.

Furthermore, the plaintiff admits that through its own error it did not rely upon the Special Exclusions of its policy. Based on the facts presented it is difficult to see how it can be said that plaintiff acted under a mistake of fact. All the facts were present, but plaintiff failed to take advantage of them. It was only induced to pay the claim because of its apparent error and negligence. It was not a case of a misunderstanding or wrong decision but rather an act which because of error failed to achieve what should have been done.

The defendant did not have notice of what had occurred on May 24, 1964, or what the plaintiff did thereafter, until suit was brought by plaintiff on May 22, 1970—a lapse of six years. Also, it was well over three years after settlement before suit was brought. This was an inexcusable and unconscionable delay. It inequitably prejudiced defendant from investigating and evaluating the facts of the underlying claim and disputing its liability for it. The equities in the case run counter to plaintiff's claim of restitution.

Moreover, unless the defendant is liable under the terms of its policy, the plaintiff is not entitled to restitution.

The plaintiff alleged in its complaint that "The defendant was at all material times under a legal duty and obligation to defend its insured, Marilyn V. Loecher, against said claim . . . and to pay any judgment rendered against said insured up to the coverage limitations. . . ." The defendant denied this allegation.

The stipulated facts and findings show that plaintiff failed to sustain its burden of proof on this issue. The findings merely indicate that Mrs. Loecher was insured by the automobile liability insurance policy issued by defendant after which appears (Exhibit 8). There are no provisions of the policy found as a fact by the court and the case is controlled

by the facts found. *Stonewall Ins. Co.* v. *Moorby,* 130 Vt. 562, 568, 298 A.2d 826 (1972).

The court, however, did determine that the payment of the claim and expenses incurred by plaintiff were voluntary. On this basis it found that under the terms of defendant's policy the plaintiff was not entitled to any indemnification.

Upon our consideration of the case, recovery by the plaintiff was properly denied by the trial court. There is no error.

*Judgment affirmed.*